IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WARREN LEE BOWIE,<br><br>           Petitioner,<br><br>vs.<br><br>TOM L. CAREY, Warden, California State Prison, Solano,<br><br>           Respondent. | No. 2:06-cv-00777-JKS<br><br>MEMORANDUM DECISION |

Petitioner Warren Lee Bowie, a state prisoner appearing *pro se*, has filed a Petition for Habeas Corpus Relief under 28 U.S.C. § 2254 challenging the denial of parole by the California Board of Prison Terms.  Bowie is currently in the custody of the California Department of Corrections and Rehabilitation, incarcerated at the California State Prison, Solano.  Respondent ("State") has answered, and Bowie has replied.  In his Reply, Bowie requested appointment of counsel and an evidentiary hearing.[1]  At Docket No. 26 Bowie has moved for an order terminating the stay in this case.

---

[1] Docket No. 16.  At Docket No. 17 Bowie also simultaneously filed a separate motion for appointment of counsel.  At Docket No. 19 that motion was denied without prejudice to renewal at a later point in the proceeding.  Bowie has not renewed his motion for appointment of counsel.  Accordingly, that matter is no longer pending before this Court.

## I.  PENDING MOTIONS

**A.      Evidentiary Hearing**.

Ordinarily, a federal habeas proceeding is decided on the complete state-court record and a federal evidentiary hearing is required only if the trier of fact in the state proceeding has not developed the relevant facts after a full hearing.[2]  It does not appear from the record that the California courts made any independent evidentiary findings, and review in this case is based upon the findings of the Board, which did hold a full hearing developing the facts.  Bowie has not identified any factual conflict that would require this Court to hold an evidentiary hearing to resolve.  The request for an evidentiary hearing is, therefore, DENIED.

**B.      Termination of Stay**.

The Stay Order entered by this Court stayed further proceedings in this case until such time as the United States Court of Appeals for the Ninth Circuit issued its mandate in *Hayward v. Marshall*.  The Ninth has rendered its en banc decision in *Hayward*[3] and issued the mandate.  Consequently, the Stay Order entered by this Court expired by its very terms.  Thus, the motion is moot.

## II.  BACKGROUND/PRIOR PROCEEDINGS

Following a trial by jury in April 1985, Bowie was convicted in the Alameda County Superior Court of one count of Murder in the Second Degree (Cal. Penal Code, § 187).  The trial

---

[2] *Townsend v. Sain*, 372 U.S. 293, 312-13, 319 (1963), *overruled on other grounds*  by *Keeny v. Tamayo-Keyes*, 504 U.S. 1 (1992), *superceded in part by statute*, 28 U.S.C. 2254(e)(2) (1996).

[3] *Hayward v. Marshall*, 603 F.3d 546 (9th Cir. 2010) (en banc).

court sentenced Bowie to an indeterminate prison term of 15 years to life.  Bowie does not challenge his conviction or sentence in this proceeding.

In November 2004 the Board of Prison Terms ("Board") found Bowie unsuitable for parole and declined to set a parole date.[4]  Bowie timely filed a petition for habeas corpus relief in the California Supreme Court, which denied his petition on January 25, 2006, citing *In re Dannenberg* (2005) 34 Cal. 4th 1061; and *In re Rosenkrantz* (2002) 29 Cal. 4th 616.[5]  Bowie timely filed his petition for relief in this Court on April 11, 2006.

After briefing was completed, the United States Court of Appeals for the Ninth Circuit, sitting en banc, decided *Hayward*.  At Docket No. 27 this Court entered an Order directing the parties to file supplemental briefs addressing the *Hayward* decision, which understood that California law created a liberty interest in each prisoner that he or she would be paroled unless the parole authority found that the prisoner presents a current danger to the community.  In particular, this Court directed that the State address the *Hayward* holding that under California law "[t]he prisoner's aggravated offense does not establish current dangerousness 'unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state' supports the inference of dangerousness."[6]  The Court

---

[4] The Board of Prison Terms was subsequently renamed the Board of Parole Hearings.

[5] The record before this court indicates that Bowie did not seek habeas relief in either the Alameda County Superior Court or the California Court of Appeals.

[6] *Hayward*, 603 F.3d at 562.

also directed the parties to consider two Ninth Circuit Decisions applying *Hayward*.[7]  Both

parties have submitted supplemental briefing.

The statement of facts, as spelled out in the Board report and read into the record by the

Presiding Commissioner are:

> "On October 26th, 1983, at approximately 6:30 p.m., Ronald
> Edward Clark contacted Phyllis Cooper.  Apparently Ms. Cooper
> was working as a prostitute.  The victim and Ms. Cooper came into
> contact and a disagreement developed.  According to all witnesses,
> no weapons were involved in the series of events up to this point.
> The prisoner, who was associated with Ms. Cooper, involved
> himself in the dispute by attacking Clark with what is believed to
> be a knife.  Bowie chased the victim for some distance and stabbed
> the victim a total of three times.  The victim was unarmed.  After
> the victim was struck he fell to the pavement.  Bowie fled the area.
> Bowie met with Cooper, who had just gone into the victim's car
> and stole the radio.  Bowie fled to the drive-in hotel where he was
> discovered leaving a public restroom in only his shorts and socks.
> The clothing which was subject of the police description were
> found in the restroom between the wall and the commode after
> Bowie had left the restroom.  A chase ensued and Bowie was
> apprehended.  Cooper was located at the Wagner Hotel, which is
> near the scene of the incident.  When located in her room at the
> hotel, it was discovered Cooper had changed her clothes also.  A
> radio was taken out of Clark's car.  The radio that was taken out of
> Clark's car was recovered."

And the prisoner's version as it is spelled out in the current Board Report,

> "While serving a prison term in Texas, Bowie states he
> corresponded with Phyllis Cooper. After paroling to Louisiana, he
> and Ms. Cooper developed a close relationship and they had a
> daughter.  They moved to the Bay Area in California where Ms.
> Cooper started residing with a relative.  Bowie and Ms. Cooper
> resided together off and on.  On the evening of October 26th ,
> 1983, Ms. Cooper came to his hotel, along with her daughter. Ms.
> Cooper left the hotel in order to call somebody about money.  Soon
> thereafter Bowie left the hotel to make a phone call regarding a job.
> He passed Ms. Cooper who was talking with a man parked in his

---

[7] *Pearson v. Muntz*, 606 F.3d 606 (9th Cir. 2010) (per curiam), and *Cooke v. Solis*, 606 F.3d 1206 (9th Cir. 2010).

car along the street.  As Bowie was crossing the street, he heard Ms. Cooper scream and saw the man physically assaulting her.  At that point Bowie started running to her aid.  He and the man started fighting in the street.  At some point Bowie pulled out a knife which he occasionally carried on his person for protection.  During the fight he held the knife in one of his hands.  While striking the man with both hands, Bowie stated he was not aware he was actually stabbing the man.  After the man fell down, Bowie ran away from the area without realizing the man was critically wounded.  Bowie states that he was only trying to protect Ms. Cooper and did not intend to kill the victim.  Bowie claimed that alcohol and drugs were not a factor in the offense."[8]

### III.  GROUNDS RAISED/DEFENSES

Bowie raises a single ground for relief:  that the evidence does not support the Board's finding that he was unsuitable for parole.  The State raises no affirmative defense.[9]

### IV.  DISCUSSION

The California Supreme Court did not provide any reasoning for its denial of Bowie's petition.  When there is no reasoned state court decision denying an issue presented to the state court and raised in a federal habeas petition, this Court must assume that the state court decided all the issues presented to it and perform an independent review of the record to ascertain whether the state-court decision was objectively unreasonable.[10]  The scope of this review is for clear error of the state-court ruling on the petition:

> [A]lthough we cannot undertake our review by analyzing the basis for the state's decision, we can view it through the "objectively reasonable" lens ground by *Williams* . . . .  Federal habeas review is not *de novo* when the state court does not supply reasoning for its decision, but an independent review of the record is

---

[8] Docket No. 11-5, pp. 21-24.

[9] *See* Rules—Section 2254 Cases, Rule 5(b).

[10] *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006); *Pham v. Terhune*, 400 F.3d 740, 742 (9th Cir. 2005) (per curiam).

required to determine whether the state court clearly erred in its application of controlling federal law. Only by that examination may we determine whether the state court's decision was objectively reasonable.[11]

"[A]lthough we independently review the record, we still defer to the state court's ultimate decision."[12]

"When habeas courts review the 'some evidence' requirement in California parole cases, both the subsidiary findings and the ultimate finding of some evidence constitute factual findings."[13] In its Order requesting supplemental briefing, this Court directed the State to "specifically identify those characteristics, other than the underlying commitment offense, that support a finding that release of the Petitioner to parole status poses a current threat to public safety, and point to the specific evidence in the record that supports that determination."[14] In order to preserve the issues for appeal, the State argues that California prisoners have no liberty interest in parole, and that if they do, the only due process protections available are a right to be heard and a right to be informed of the basis for the denial.[15] That is, the State contends that there is no due process right to have the rejection of parole supported by sufficient evidence.

---

[11] *Delgado v. Lewis* (*Delgado II*), 223 F.3d 976, 982 (9th Cir. 2000) (internal citation omitted); *see also Lewis v. Mayle*, 391 F.3d 989, 996 (9th Cir. 2004).

[12] *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002). This Court notes, however, that the question of the deference to be given summary denials was left open by the Ninth Circuit sitting en banc. *See Pinholster v. Ayers,* 590 F.3d 651, 663 (9th Cir. 2009) (en banc); *Richter v. Hickman*, 578 F.3d 944, 951 n.5 (9th Cir. 2009) (en banc). The issue is presently pending before the Supreme Court *sub nom, Harrington v. Richter*, No. 09-587.

[13] *Cooke*, 606 F.3d at 1216.

[14] Docket No. 27, p. 2.

[15] *See Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 15 (1979).

Because they are contrary to binding Ninth Circuit law,[16] the State's arguments are without merit. The State asserts that this Court's Order requiring that the evidence supporting the finding that the release of Bowie to parole status poses a current threat to public safety be identified is an improper question.  Thus, the State declined to provide the required information.[17]  While the State properly preserved its arguments that *Hayward* was erroneously decided for further appellate review, the State could not ignore the clearly articulated requirements of *Hayward* and decline to obey this Court's specific order.[18]  In so doing, even if this Court's Order was "improper," the State did so at its own peril.[19]  This Court treats the State's failure to point to the

---

[16] *See Pirtle v. California Bd. of Prison Terms*, 611 F.3d 1015, 1020 (9th Cir. 2010); *Cooke*, 606 F.3d at 1213-14 (citing *Hayward*, 603 F.3d at 561-64); *Pearson*, 606 F.3d at 610-11.

[17] If this were a single instance, this Court would be inclined to ignore the refusal to address *Hayward*.  Unfortunately, this is not such an isolated incident.  This Court has received several similar responses to its order in other parole cases that were held in abeyance pending the en banc decision in *Hayward*, e.g., *Walker v. Kramer*, Case No. 2:07-cv-00803-JKS, *Singer v. Sisto*, Case No. 2:08-cv-00048-JKS, *Dewey v. Sisto*, Case No. 2:08-cv- 00580-JKS, and *Feliz v. Sisto*, Case No. 2:08-cv-01508-JKS, of which this Court takes judicial notice.  Fed. R. Evid. 201.  Consequently, this Court must conclude that the position taken in this case represents the official position of the State of California, acting through its Attorney General.

[18] Indeed, as a result of the failure of the State to comply with this Court's Briefing Order, the State appears to assume that this Court will mine the record to find sufficient evidence to support the decision of the California Supreme Court.  It is unquestionably the rule that the burden of establishing a violation of a constitutional right sufficient to warrant habeas relief is placed on the petitioner.  *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").  That does not, however, mean that the petitioner has the burden of proving a "negative," i.e., that something does not exist.  The State should not expect a federal district court to mine the record to find evidence that Bowie is currently dangerous, which, if found, would support a determination that, as required by *Hayward*, the California judicial decision approving the Board's decision rejecting parole was not an unreasonable application of the California some evidence requirement, or was not based on an unreasonable determination of the facts in light of the evidence.

[19] *See Walker v. City of Birmingham*, 388 U.S. 307, 314 (1967) ("until its decision is reversed for error by orderly review, either by itself or by a higher court, [a court's] orders based

evidence in the record supporting the factors, other than the commitment offense, cited by the

Board in finding that Bowie poses a present threat of danger to society as conceding that no such

evidence exists.[20]

In finding Bowie unsuitable for parole, the Board found:

> The offense was carried out in a manner which showed a total callous
> disregard for human suffering and just a total disregard for the lack of the
> consequences of the actions.  And the motive for the crime was very trivial in
> relation to the offense, and that this crime could have been prevented, that you had
> actually chased the victim and stabbed him.  These conclusions are drawn from
> the Statement of Facts where on October 26th, 1983, you observed a friend of
> yours, Ms. Cooper, who apparently was working as a prostitute and she was
> having contact with the victim and there was argument or a scuffle that ensued.
> And you went over and involved yourself in the crime.  You had a knife and you
> chased the victim for some distance and stabbed him a total of three times, then
> you left without trying to seek any help for the victim.  And at the same time Ms.
> Cooper, who you were defending, went to the victim's car and took the radio out
> and took it back to the hotel where both of you fled.  So this was really an
> incomprehensible crime because you were not under the influence of alcohol or
> drugs at the time, you knew what you were doing, so this was strictly a crime
> committed out of anger.  You do have a record of violence and when I talk about
> your record of violence, you had arrests for a robbery, and we do consider that to
> be a violent crime.  And you have a battery arrest.  You have an escalating pattern
> of criminal conduct.  Your crimes were getting worse.  You have a history of
> unstable relationships with others.  And you failed to profit from society's
> previous attempts to correct your criminality.  That included county jail, prior
> prison term, and parole.  When you look at your unstable social history, you did

---

on its decision are to be respected, and disobedience of them is contempt of its lawful authority,
to be punished.") (quoting *Howat v. State of Kansas*, 258 U.S. 181, 189-90 (1922)); *Celotex
Corp. v. Edwards*, 514 U.S. 300, 313 (1995) (same); *United States v. United Mine Workers of
America*, 330 U.S. 358, 293 (1947) (same).

[20] This Court recognizes that the court in *Hayward* ultimately affirmed the denial of
parole.  The Attorney General and his subordinates know the record in the case.  They also know
the Ninth Circuit's decision in *Hayward* and the California Supreme Court decisions in
*Lawrence* and *Shaputis*.  If the record in this case could be reconciled with those cases and the
denial of parole, competent counsel would have so argued.  Because the Attorney General is
competent counsel, the State's failure to develop the argument lends support to only one
conclusion:  that the record will not support a finding of present dangerousness.

have no criminal history as a juvenile, but as we discussed today, you do have three children from three different women.  You do have a criminal history beginning in April of 1970 and your history of arrests show for burglary, in fact several burglaries, theft, escape, some more burglaries, robbery with a deadly weapon for which you went to prison on a 10-year sentence, you were released on parole and absconded from parole and was eventually arrested for this crime.  You have actually been disciplinary free this prior rating period, as we're looking at everything.  Your last written discipline was in March of '01 for non-compliance with grooming, and we do have the court order showing that you don't have to shave. And the one prior to that was in '98 was for compliance with grooming standards.  So actually you haven't had a violent 115 since 1990 when you had assault on an inmate, and prior to that.  So you've been fairly disciplinary free from serious disciplines for some time.  The Psychiatric Psychological Report dated 8/6/04 by Dr. Preston Davis, and we're going to ask that this be clarified for the next hearing, Dr. Davis ends up summarizing the Report by talking about your assessment of dangerousness that you do not currently appear to show a greater than average propensity for future dangerousness when compared to the general population.  We'd like to have that clarified as to whether he's talking about the general prison population or the general community population.  And it doesn't really spell it out in there.  If it puts a question in my mind, it's going to put a question in the mind of anybody else who is going to be reviewing it as to exactly what he means.  Your parole plans, you don't have any.  You know what you want to do, but do you now understand that you have to have parole plans for California and you have to have current letters when you come before the Board.  And it's not up to the Panel to call and see whether or not you have parole plans.  We just don't do that.  It's up to you to do that.  And so you need to make sure that you follow through.  Anything that comes in between now and the time, and we do have, we did have the letters that you have.  They were not put into the file, but it's good if you get anything you have to remember to bring it, because none of that stuff was in the file, you know, from your family in Louisiana.  And I personally don't know how long it would take.  Louisiana would have to accept you as a parolee on a murder conviction before you could transfer there.  So I'm not sure what the process would be.  So you need to make sure you have good solid parole plans for California, okay.  We're just looking at what you've done, and you really should be commended.  You've really done quite well in your vocations.  Your vocational auto mechanics, your mill and cabinet, office services certificate, your wood shop, and so you've done quite well there.  You've had a number of different assignments and you get exceptional work reports.  And we did recognize that you're been a motivational speaker at inmate orientation and you enjoy doing that.  And then in 2000 you did get a commendation for saving an inmate's life by doing the Heimlich maneuver.  So really you've done quite well but the positive aspects of your behavior do not outweigh the factors of unsuitability.   So we're going to ask that you remain disciplinary free, continue with your upgrading whatever you can do vocationally and in your self help.

9

Participate in whatever you can.  And if you're reading any books or anything, make sure you make a list of them and what it is that you've learned from the books that you've read.  And then we're going to ask for the clarification on the Psychiatric Report.  You're in for murder.  You're in as a prior conviction with a prior prison term on a felony that was also very serious, you got 10 years, and you had discipline coming into the system.  And so we want to make sure everything is as clarified as it can be for you to make sure that you have a good chance when it's recommended for you to be given a parole date that everything goes forward, okay.  With that, do you have any questions?  And I don't normally ask that, but do you know what you need to do now to get ready for your next hearing?[21]

This Court must decide the case on the law as it exists at the time it renders is decision and, if the law changes while the case is pending, this Court applies the new rule.[22]  Thus, although it establishes a new rule, the holding in *Hayward* is controlling.  In this case, this Court "need only decide whether the California judicial decision approving the [Board's] decision rejecting parole was an 'unreasonable application' of the California 'some evidence' requirement, or 'was based on an unreasonable determination of the facts in light of the evidence.'"[23]  By its reference to § 2254(d), the Ninth Circuit implicitly, if not explicitly, directed this Court to apply § 2254(d) to the decisions of the California Supreme Court using the same standards as are applied to the determination of the law as established by the United States Supreme Court.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

---

[21] Docket 11-5, pp. 60-65.

[22] *See Thorpe v. Housing Authority of City of Durham*, 393 U.S. 268, 281-82 (1969); *Lambert v. Blodgett*, 393 F.3d 943, 973 n.21 (9th Cir. 2004).

[23] *Hayward*, 603 F.3d at 563 (footnotes citing 28 U.S.C. § 2254(d) omitted).

Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."[24]  The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[25]  When a claim falls under the "unreasonable application" prong, a state court's application of Supreme Court precedent must be objectively unreasonable, not just incorrect or erroneous.[26]  The Supreme Court has made clear that the objectively unreasonable standard is a substantially higher threshold than simply believing that the state court determination was incorrect.[27]  Consequently, it appears that, under the mandate of *Hayward*, this Court must canvas and apply California law as it existed at the time of the state court decision to the facts in the record as presented to the state court.

The mandate in *Hayward* is that this Court must review the decisions of state courts interpreting and applying state law—in effect serving as a super-appellate court over state-court decisions.  This is in tension with the holdings of the Supreme Court.  It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law.[28]  "[A] state court's interpretation of state law, including one announced on direct

---

[24] 28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 404-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[25] *Williams*, 529 U.S. at 412.

[26] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[27] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

[28] *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (it is presumed that the state court knew and correctly applied state law),

appeal of the challenged conviction, binds a federal court sitting in habeas corpus."[29]  This

principle applied to federal habeas review of state convictions long before AEDPA.[30]  A federal

court errs if it interprets a state legal doctrine in a manner that directly conflicts with the state

supreme court's interpretation of the law.[31]  It does not matter that the state supreme court's

statement of the law was dictum if it is perfectly clear and unambiguous.[32]

At the time of the state court decision in this case, the California "some evidence" rule

was embodied in *Rosenkrantz* and *Dannenberg*.  Subsequently, the California Supreme Court,

applying *Rosenkrantz* and *Dannenberg*, decided *In re Lawrence*[33] and *In re Shaputis*.[34]

In *Rosenkrantz*, the California Supreme Court held:

[. . . .]  "Due process of law requires that [the Board's] decision be
supported by some evidence in the record.  Only a modicum of evidence is
required.  Resolution of any conflicts in the evidence and the weight to be given
the evidence are matters within the authority of the [Board].  [. . . .]  [T]he precise
manner in which the specified factors relevant to parole suitability are considered
and balanced lies within the discretion of the [Board] . . . .  It is irrelevant that a

---

*overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002); *see also Engle v. Isaac*,
456 U.S. 107, 119 (1982) (challenging the correctness of the application of state law does not
allege a deprivation of federal rights sufficient for habeas relief); *Bell v. Cone*, 543 U.S. 447, 455
(2005) (a federal court may not lightly presume that a state court failed to apply its own law).

[29] *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *see West v. AT&T*, 311 U.S. 223, 236
(1940) ("[T]he highest court of the state is the final arbiter of what is state law. When it has
spoken, its pronouncement is to be accepted by federal courts as defining state law . . . .").

[30] *See Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975) ("state courts are the ultimate
expositors of state law").

[31] *See Bradshaw*, 546 U.S. at 76-78 ("Because the Sixth Circuit disregarded the Ohio
Supreme Court's authoritative interpretation of Ohio law, its ruling on sufficiency of the evidence
was erroneous.").

[32] *Id.* at 76.

[33] 190 P.3d 535 (Cal. 2008).

[34] 190 P.3d 573 (Cal. 2008).

12

court might determine that evidence in the record tending to establish suitability for parole far outweighs evidence demonstrating unsuitability for parole. As long as the [Board's] decision reflects due consideration of the specified factors as applied to the individual prisoner in accordance with applicable legal standards, the court's review is limited to ascertaining whether there is some evidence in the record that supports the [Board's] decision."[35]

The California Supreme Court then held:

> The nature of the prisoner's offense, alone, can constitute a sufficient basis for denying parole. (Citations omitted.) Although the parole authority is prohibited from adopting a blanket rule that automatically excludes parole for individuals who have been convicted of a particular type of offense, the authority properly may weigh heavily the degree of violence used and the amount of viciousness shown by a defendant. [. . . .]
>
> In some circumstances, a denial of parole based upon the nature of the offense alone might rise to the level of a due process violation—for example where no circumstances of the offense reasonably could be considered more aggravated or violent than the minimum necessary to sustain a conviction for that offense. Denial of parole under these circumstances would be inconsistent with the statutory requirement that a parole date normally shall be set "in a manner that will provide uniform terms for offenses of similar gravity and magnitude in respect to their threat to the public . . . ." (Pen.Code, § 3041, subd. (a).) "The Board's authority to make an exception [to the requirement of setting a parole date] based on the gravity of a life term inmate's current or past offenses should not operate so as to swallow the rule that parole is 'normally' to be granted. Otherwise, the Board's case-by-case rulings would destroy the proportionality contemplated by Penal Code section 3041, subdivision (a), and also by the murder statutes, which provide distinct terms of life without possibility of parole, 25 years to life, and 15 years to life for various degrees and kinds of murder. (Pen. Code, § 190 et seq.) [¶] Therefore, a life term offense or any other offenses underlying an indeterminate sentence must be particularly egregious to justify the denial of a parole date." ( Citation omitted.)[36]

In *Dannenberg* the California Supreme Court explained:

---

[35] *Rosenkrantz*, 59 P.3d at 218. Quoted with approval in *Shaputis*, 190 P.3d at 585.

[36] *Id.* 59 at 222; *see Shaputis*, 190 P.3d at 584-85 ("The record supports the Governor's determination that the crime was especially aggravated *and*, importantly, that the aggravated nature of the offense indicates that the petitioner poses a current risk to public safety." (emphasis in the original)).

Case 2:06-cv-00777-JKS   Document 32   Filed 11/08/10   Page 14 of 18

[. . . .]  So long as the Board's finding of unsuitability flows from pertinent criteria, and is supported by "some evidence" in the record before the Board [citing *Rosenkrantz*], the overriding statutory concern for public safety in the individual case trumps any expectancy the indeterminate life inmate may have in a term of comparative equality with those served by other similar offenders. Section 3041 does not require the Board to schedule such an inmate's release when it reasonably believes the gravity of the commitment offense indicates a continuing danger to the public, simply to ensure that the length of the inmate's confinement will not exceed that of others who committed similar crimes.[37]

The California Supreme Court then held:

Thus, there clearly was "some evidence" (citing *Rosenkrantz*) to support the Board's determination that Dannenberg's crime was "especially callous and cruel," showed "an exceptionally callous disregard for human suffering," and was disproportionate to the "trivial" provocation.  Accordingly, under *Rosenkrantz,* the Board could use the murder committed by Dannenberg as a basis to find him unsuitable, for reasons of public safety, to receive a firm parole release date.[38]

The Board must, however, "point to factors beyond the minimum elements of the crime for which the inmate was committed" that demonstrate the inmate will, at the time of the suitability hearing, present a danger to society if released.[39]  The Board "may credit evidence suggesting the inmate committed a greater degree of the offense than his or her conviction evidences."[40]  In *Lawrence*, however, the California Supreme Court rejected the argument "that the aggravated circumstances of a commitment offense inherently establish current dangerousness," holding:

 "[W]e conclude that although the Board and the Governor may rely upon the aggravated circumstances of the commitment offense as a basis for a decision denying parole, the aggravated nature of the crime does not in and of itself

---

[37] *Dannenberg*, 104 P.3d at 795.

[38] *Id.* at 803.

[39] *Id.,* 104 P.3d at 786-87, 802-803; *see Rosenkrantz*, 59 P.3d at 222.

[40] *Dannenberg*, 104 P.3d at 803 n.16 (citing *Rosenkrantz*, 59 P.3d at 219).

14

provide some evidence of *current* dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety."[41]

This is the clarification upon which *Hayward*, *Pearson*, and *Cooke* rely, and it was this language in *Lawrence* to which this Court alluded in its Order, which the State declined to address.

With respect to the underlying commitment offense, the applicable regulation provides:

(1) Commitment Offense.  The prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include:
  (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
  (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
  (C) The victim was abused, defiled or mutilated during or after the offense.
  (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
  (E) The motive for the crime is inexplicable or very trivial in relation to the offense.[42]

The evidence clearly supports a finding that this case falls within the scope of (c)(1)(D) and (E), and probably falls within the scope of (c)(1)(B).  Under California law, a court neither re-weighs the evidence nor substitutes it's discretion for that of the Board.  Judicial review of a decision denying parole is "extremely deferential."[43]  Thus, under *Rosenkrantz* and *Dannenberg*, cited by the California Supreme Court in its decision, this Court cannot say that the assumed decision of the California Supreme Court was contrary to, or involved an unreasonable

---

[41] 190 P.3d at 554-55; *see Cooke*, 606 F.3d at 1214.

[42] Cal. Code. Regs., tit. 15, § 2402(c).

[43] *Rosenkrantz*, 59 P.3d at 210.

application of California law at the time it was decided, or was based on an unreasonable determination of the facts in light of the evidence.  On the other hand, because *Hayward*, *Pearson*, and *Cooke* require that *Lawrence* and *Shaputis* be applied, the decision of the California Supreme Court in this case was contrary to, or involved an unreasonable application of California law.

While the record in this case might support an argument that the denial of Bowie's parole can be reconciled with *Pearson*, *Cooke*, and *Pirtle*, the State has rejected the opportunity this Court gave to make that argument.  Instead, the State decided to stand on its position that *Hayward*, *Pearson*, *Cooke*, and *Pirtle* were wrongly decided and need not be followed.

The Board clearly found that Bowie's crime was atypical, a response to a trivial provocation, and that his crime culminated an accelerating history of violent behavior.  This would be sufficient to support denial of parole under *Rosenkrantz* and *Dannenberg*.  What the Board did not do, and the State expressly declined to do, is explain how events ending in 1983 show that Bowie presented a significant risk to public safety in 2004, rendering the decision that Bowie was ineligible for parole insufficient under *Lawrence* and *Shaputis*.  Thus, under *Hayward*, *Pearson*, *Cooke*, and *Pirtle*, this Court is compelled to find that the Board's denial of parole violated Bowie's liberty interest protected by the Due Process Clause of the Fourteenth Amendment.[44]

---

[44] In reaching this conclusion this Court is mindful of the following significant problems: (1) the applicability of *Lawrence* and *Shaputis* to cases in which the state court decision became final prior to August 21, 2008; and (2) the appropriate scope of review by federal courts in federal habeas proceedings under 28 U.S.C. § 2254(d) of the application by the California courts of the California "some evidence" rule.  In other words, to what extent may subsequent California cases modify the "liberty interest" established by California law and recognized in *Hayward*, *Pearson*, and *Cooke*.

V.  ORDER

**IT IS THEREFORE ORDERED THAT** the request for an evidentiary hearing is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Motion  to Unstay Case at Docket No. 26 is **DENIED**, as moot.

**IT IS FURTHER ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **GRANTED**.

**IT IS FURTHER ORDERED THAT** the denial of parole is vacated and this matter is remanded to the California Board of Parole Hearings for further proceedings consistent with the decisions of the California Supreme Court in *In re Lawrence*, 190 P.3d 535 (Cal. 2008), and *In re Shaputis*, 190 P.3d 573 (Cal. 2008),[45] as interpreted by *Hayward v. Marshall*, 603 F.3d 546 (9th Cir. 2010) (en banc),  *Pearson v. Muntz*, 606 F.3d 606 (9th Cir. 2010) (per curiam), *Cooke v. Solis*, 606 F.3d 1206 (9th Cir. 2010), and *Pirtle v. California Board of Prison Terms*, 611 F.3d 1015 (9th Cir. 2010).

**IT IS FURTHER ORDERED THAT**, if the Board of Parole Hearings has not held a hearing within 120 days of the date of entry of this Order, the Secretary, California Department of Corrections and Rehabilitation, must release Bowie to parole status.

**IT IS FURTHER PROVIDED THAT** nothing in this Order is intended to, nor may it be construed as, restricting or otherwise inhibiting, directly or indirectly, the authority of the

---

[45] *See In re Prather*, 234 P.3d 541, 550-54 (Cal. 2010); *Haggard v. Curry*, --- F.3d ---, 2010 WL 4015006 (9th Cir. October 12, 2010).

Secretary, California Department of Corrections and Rehabilitation, to set restrictions or conditions on the grant of parole to the extent otherwise provided by the laws of the State of California.

The Clerk of the Court is to enter final judgment accordingly.

Dated:  November 5, 2010.

/s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
United States District Judge

18